UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JENNIFER STANLEY,<br><br>Plaintiff,<br><br>v.<br><br>WALMART STORES EAST, LP,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 15-86-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

On July 3, 2014, at approximately 11:12 p.m., Jennifer Stanley slipped and fell in one of the main aisles in the Pikeville Walmart. R. 16 (video surveillance tape). After the fall, she sued Walmart. R. 1. Stanley alleges that a liquid—later identified as juice—was on Walmart's floor, and that the liquid caused her fall. She claims that she injured her knee and big toe when she fell. R. 17-1 at 2.

Walmart had surveillance cameras in its store. Thus, Walmart produced a video of the fall, but that video does not reveal when the substance fell on the floor. What the video does show is that, at 11:08 p.m., a Walmart employee, Otis Rowe, walks down the aisle in question while pushing a few shopping carts. Rowe walks past the spot where Stanley later falls without noticing anything out of the ordinary. R. 14-5 at 4–5 (Rowe deposition transcript). He takes a left down a nearby aisle and disappears from the frame. Customers continue to mill about the area. Then, about three minutes later, Stanley comes into the video frame. She walks down the aisle, occasionally stopping to let other customers pass in

front of her. She is walking directly behind two other customers when she abruptly slips and falls near a shelf that is next to the freezer section.

**DISCUSSION**

Walmart now moves for summary judgment. Walmart does not dispute that a substance was on the floor and that the substance caused the plaintiff's injuries. Instead, Walmart argues (1) that an employee did not cause the spill, and (2) that Walmart had insufficient time to discover and remove the substance before Stanley fell. R. 14-1 at 1.

Courts must grant summary judgment if "the evidence, viewed in the light most favorable to the [plaintiff], reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). Once a defendant has met its initial burden of showing that no genuine issue of material of fact remains, the plaintiff must present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, she must present "significant probative evidence . . . on which a reasonable jury could return a verdict" in her favor. *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009).

A business owner like Walmart must exercise ordinary care to keep its premises in a "reasonably safe condition for normal use by [its] customers." *Lanier v. Walmart Stores, Inc.*, 99 S.W.3d 431, 435 (Ky. 2003). In slip-and-fall cases, the burden is first on the plaintiff to show that there was a foreign substance on the floor and that the substance was a substantial factor in causing her accident and injury. *Id.* at 435–36. Once the plaintiff has done so, the burden shifts to the defendant. The defendant must then "prove the absence of negligence," *i.e.* must prove that it exercised reasonable care. *Id.* at 437. To do that, a

defendant must show two things: (1) that the defendant's employees did not cause the foreign substance to be on the floor, and (2) that the defendant had insufficient time to deal with the substance before it caused the plaintiff's injuries. *Id.* at 435.

    First, Walmart claims that an employee did not cause the spill. As evidence, Walmart points to Rowe's statement and the surveillance video. Rowe, a Walmart employee, passed by the location of the spill three and a half minutes before Stanley slipped. The video shows Rowe walking down the middle of the aisle, so there is no indication that Rowe caused the spill. And Rowe saw no substance on the floor when he walked by. Rowe stated that he was trained specifically to look for spills at all times.[1] R. 17-4 at 2. So, Walmart claims, the floor was clean three and a half minutes before Stanley slipped and fell. In the intervening three and a half minutes, the video shows that only customers—not employees—come near the vicinity of the spill. Thus, Walmart claims, an employee did not cause the spill.

    In response, the plaintiff argues that the surveillance video does not conclusively establish that a customer caused the spill. R. 17 at 3. The Court agrees.[2] But Walmart need

---

[1] The plaintiff argues that, since Rowe was pushing shopping carts, his view of the floor was obstructed by the metal bars that make up the bottom of the carts. But Rowe stated that he could see through the bottom of the shopping carts even with the metal bars. R. 17-4 at 2. And this makes sense. Anyone that has shopped in a grocery store is all too familiar with the shopping carts. And seeing the ground is not a problem—especially seeing a puddle. The grid allows a view of the ground (assuming, of course, that the cart is not filled with groceries). In any event, Rowe further stated that he is constantly looking for spills as part of his job. *Id.*

[2] Walmart states that the surveillance video shows a customer actually causing the spill about a minute and half before Stanley falls. *See* R. 14-3 at 3 (stating that the video shows "[a] customer actually hitting the sidekick" and "the other customer pick[ing] . . . the bottle up" from the floor). But that part of the video is especially pixelated, and the action takes place a good distance from the camera. R. 16 at 11:00 p.m. to 11:11 p.m. The Court's review of the video shows a customer with a shopping cart coming very close to the shelf at issue, but the video does not clearly show the customer hitting the shelf and knocking a bottle off. *Id.* The video does clearly show, however, another customer picking something up off the floor and placing it back on the shelf closest to where Stanley fell. *Id.* In sum, the video does not conclusively show that a specific customer caused the spill. The video only suggests that Walmart's explanation for the spill is a reasonable one. Given that the Court must construe the evidence in the light most favorable to the plaintiff at the summary judgment stage, the Court will not rely upon Walmart's theory about the customer knocking the bottle off the shelf. *See Laster*, 746 F.3d at 726. Instead, as discussed above, the Court will rely upon Rowe's statement and the clearer parts of the surveillance video as sufficient evidence that a Walmart employee did not cause the spill.

not "conclusively establish" that a customer caused the spill. At the summary judgment stage, Walmart must come forth with evidence that it did not cause the spill. Walmart did so. Specifically, Rowe stated that he walked by the area and did not see a spill. And the video conclusively shows that only customers were near the area of the spill between Rowe's walk-by and Stanley's fall. Then, to create a "genuine issue" as to that fact, Stanley has to come forward with some contrary "evidence on which the jury could reasonably find for [her]." *Anderson*, 477 U.S. at 252.

Here, Stanley has not put forth any evidence to the contrary from which a reasonable jury could conclude that Walmart caused the spill. *See* R. 14-7 at 3; *see also F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 299 (6th Cir. 2009) (stating that summary judgment is appropriate only "where reasonable minds could not disagree as to the conclusion to be drawn from the evidence"). If the plaintiff has no evidence that a Walmart employee caused the spill, how could a "reasonable" jury find that Walmart caused the spill anyway? A jury must base its decision on actual evidence, not hunch or speculation. *See, e.g., Donahue v. Simms*, 419 S.W.2d 154, 158 (Ky. 1967); *see also Corley v. Wal-Mart Stores E., LP*, No. 15-5202, 2016 WL 53406, at *3 (6th Cir. Jan. 4, 2016) (stating that mere "conjecture" is not enough to prevail under Tennessee law). Stanley does not even offer an alternate theory for how a Walmart employee caused the spill. She does not have a single witness stating that a Walmart employee caused the spill, even though numerous customers walked by the shelf before her fall. So a jury would have to speculate that an employee caused the spill without any evidence from which to draw that conclusion. Thus, Walmart's argument prevails.

The only question remaining, then, is whether Walmart had insufficient time to discover and remove (or warn of) the substance before Stanley fell. As stated above, the

Court must view the evidence about how long the substance was on the floor "in the light most favorable to the [plaintiff]." *Laster*, 746 F.3d at 726. The evidence—viewed in the light most favorable to Stanley—shows that the substance was on the floor for a maximum of three and a half minutes. As a result, Walmart alleges that three and a half minutes was insufficient time for it to deal with the spill under the circumstances.

But sufficiency of time is a jury question. Why? Because the "reasonableness" of the time period the store took to address the spill is "completely dependent upon the surrounding circumstances." *See Johnson v. Wal-Mart Stores E., LP*, No. CV 15-27-GFVT, 2016 WL 1020841, at *7 (E.D. Ky. Mar. 14, 2016) (holding that whether nine and a half minutes was insufficient time was a question of fact for the jury). For example, how large is the business? Was the spill in a highly-trafficked or especially visible area? What was the business's system for discovering and removing potential hazards? Were employees trained to look for hazards? Five minutes, for instance, might be sufficient time for the owner of a gas station or small coffee shop to remedy a spill. But the same time period might be insufficient for, say, the owner of a car dealership or "big box" store. More importantly, that issue is not for a court to decide at the summary judgment stage. Such a fact-intensive inquiry is best left to a jury. *See Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 464 (6th Cir. 2014); *see also Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 376 (6th Cir. 2009) (application of the reasonable-person standard to an individual's conduct is generally left to a jury). Indeed, as the Sixth Circuit stated, "Kentucky courts have most often found summary judgment inappropriate where a plaintiff can point to a discrete hazard on the floor." *See Denney v. Steak N Shake Operations, Inc.*, 559 F. App'x 485, 487 (6th Cir. 2014); *cf. McIntosh v. United States*, No. CIV.A. 09-11-KSF, 2010 WL 812835, at *2 (E.D. Ky. Mar. 4, 2010)

(suggesting that summary judgment is possible under *Lanier* but denying summary judgment) (citing *Lanier*, 99 S.W.3d at 435–36 (also denying summary judgment)).

When is summary judgment appropriate? That is not an easy question to answer, as this case proves. Summary judgment is not about which side should win. In other words, the judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Here, it might seem like three and a half minutes in a large box store is insufficient time to discover and clean a spill. But ultimately, that is not a legal question. Neither side has presented evidence why three and a half minutes is sufficient or insufficient. The defendant points to no authority suggesting that the Court should hold that three and a half minutes is insufficient time here.[3] Could there be a case where, at the summary judgment stage, the overwhelming evidence indicates that the hazard was on the floor for an insufficient amount of time? Sure. For example, if a customer spills something on the fourth floor of a five-floor department store and another customer slips ten seconds later, a court might find that no reasonable jury could hold the department store liable for not cleaning the spill in time. *See Anderson*, 477 U.S. at 248 (summary judgment is appropriate where evidence would not allow a reasonable jury to return a verdict for the nonmoving party); *Snyder*, 580 F. App'x at 464 (summary judgment appropriate when there is "only one reasonable determination"). But the Court is not faced with that situation here. Reasonable minds may disagree whether three and half

[3] The defendant cites a case from another district court that held that "a period of only a few minutes is not enough time, as a matter of law, for Defendant to have discovered the alleged condition and to have repaired or warned of it." *Miller v. Wal-Mart Stores E., LP*, No. 3:09-CV-173, 2011 WL 5023281, at *4 (E.D. Tenn. Oct. 20, 2011). But that case is inapplicable. First, it applies Tennessee, not Kentucky, law. In Tennessee, the burden is on the *plaintiff* to establish that the premises owner had constructive notice. *Id.* Second, the court cites *Stump v. Wal-Mart Stores, Inc.*, 103 F.3d 131 (6th Cir. 1996) in support of that proposition. But *Stump* pre-dates *Lanier*, when the burden was on the plaintiff to prove the approximate amount of time that the substance was on the floor. *See Stump v. Wal-Mart Stores, Inc.*, 946 F. Supp. 492, 494 (E.D. Ky.), *aff'd*, 103 F.3d 131 (6th Cir. 1996). After *Lanier*, a plaintiff no longer has the burden to prove the amount of time the substance was on the floor.

minutes was sufficient time for Walmart to clean the spill or to warn Stanley of it. If a person were to believe that such time was sufficient, this Court would have no basis—in law, in logic, or in this record—on which to label that belief an unreasonable one. At the very least, Walmart has provided this Court with no such basis. Therefore, the Court must deny Walmart's motion for summary judgment.

## CONCLUSION

Whether three and a half minutes was insufficient time for Walmart to remove or warn of the spill is a question of fact that must be decided by a jury. Thus, the Court will deny Walmart's motion for summary judgment.

Accordingly, it is **ORDERED** that:

(1) The defendant's motion for summary judgment, R. 14, is **DENIED**.

(2) Trial remains set for **Monday, July 18, 2016**, **at 1:00 p.m.**, at the United States Courthouse in **Pikeville**, Kentucky. *See* R. 5 for further instructions.

(3) A separate order will issue setting a pretrial conference and the related deadlines.

This the 31st day of May, 2016.




**Signed By:**
***Amul R. Thapar*** AT
**United States District Judge**